UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

(Alexandria Division)

| | |
|---|---|
| MOHAMED M. SALIM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. #1:15-cv-468 (LMB/IDD) |
| | ) |
| EDWARD DAHLBERG, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE*
REGARDING TESTIMONY OF DRS. GOODWIN AND HAUDA

Plaintiff Mohamed Salim has moved this court for an order authorizing his reading into evidence at trial the redacted transcripts of the *de bene esse* depositions of Tress Goodwin, M.D., and William Hauda, M.D. attached hereto as Exhibits A and B. For the following reasons, this motion should be granted. At the court's direction, this motion is being filed by November 20 – the day after the depositions were taken.

Background

Mr. Salim earlier filed a motion *in limine* seeking leave to present the testimony of Drs. Goodwin and Hauda via previously identified business records. Defendant Edward Dahlberg objected and the court ruled that the doctors' evidence would not be admissible except via live testimony or *de bene esse* deposition. The *de bene esse* depositions of these witnesses was arranged, and brief depositions were conducted on November 19. Having redacted numerous questions or answers to which objection was stated by counsel for Mr. Dahlberg, and also

redacted all his own counsel's objections to cross-examination questions by defense counsel, Mr. Salim moves for leave to introduce each transcript into evidence.[1]

Mr. Salim acquiesces in all of Mr. Dahlberg's objections to his questioning of Dr. Hauda. The following questions and answers remain in dispute between the parties relative to the the testimony of Dr. Goodwin:

1. Exhibit A at 50:8-12. Dr. Goodwin having just testified that Mr. Salim was noted in the Fair Oaks chart as having had "right tympanic membrane erythematous and not perforated," counsel asked her to "translate that for the jury." In response, Dr. Goodwin explained that Mr. Salim's right eardrum was reported as having been red, with no perforation. *Id.* at 50:13-22. Defense counsel objected that this amounted to Dr. Goodwin's "testifying as to what some other doctor said, and the relevancy." *Id*. at 8-10.

As to the hearsay issue, Dr. Goodwin had previously testified that she based her own diagnosis (of concussion) on her examination of Mr. Salim and her review of his Fair Oaks Hospital chart. *Id*. 16:3-22. "That is my typical practice as an ER physician, is to read prior notes if they have relevance to the case – to my case." *Id*. at 54:6-8. Indeed, It's much quicker for me to review and much more accurate to see a colleague's report that it is for me to always go off what patients say." *Id*. 53:13-16. This rendition into plain English of medical language is appropriate both under Fed.R.Evid. 404(4) and simply as an aid to the jury in understanding medical terminology.

---

[1]Redacted passages have been X'ed out. Brackets have been placed around defense objections that are contested here.

The matter is relevant because Mr. Salim will present medical evidence from the Fair Oaks doctor who first saw him that a red eardrum is associated with pressure on the eardrum such as that coming from a blow to the ear. (Mr. Salim claims that Mr. Dahlberg struck him twice on the right side of the face, once near the ear.)

      2. <u>Exhibit A at 17:8-20</u>. Dr. Goodwin saw Mr. Salim at Fairfax Hospital almost one week after he had been seen at Fair Oaks Hospital and diagnosed with a fracture of the jaw (maxillary spine). She did not make this diagnosis, but she had read the radiologist's report and the attending physician's diagnosis to this effect. *Id*. at 8:9 - 9:8; 16:3-22. In response to counsel's observation that she did not herself diagnosis a fracture of the maxillary spine and but read this in Mr. Salim's Fair Oaks Hospital record, Dr. Goodwin stated:

> Correct. I reaffirmed that he's going to have that diagnosis until he's healed from it. So presumptively after only eight [*sic*] days he would still have that fracture. I didn't reimage him because I was – did not want to subject him to the radiation and also didn't want to if there's no indication to do it.

*Id.* at 17:8-14. Counsel for Mr. Dahlberg objected to this as hearsay. "She's just reading from what someone else may have said." *Id*. at 18-19. What Dr. Goodwin was doing was referring to a prior medical chart on her patient on which she expressly relief in order to reach a diagnosis and a proposed plan of treatment. *Id*. at 16:3-22. Her testimony to this effect is admissible under Fed.R.Evid. 804(4).

      3. <u>Exhibit A at 54:14-15; 55:3</u>. Counsel asked if the Fair Oaks finding of redness in Mr. Salim's right eardrum (tympanic membrane) was consistent with his report of having been punched in the right ear. Defense counsel objected to the response (which was affirmative) on the basis that "That's something she did not herself observe or diagnose." Counsel also objected that any answer would be hearsay and speculation.

As to the fact that Dr. Goodwin did not originally diagnose the red eardrum but read of it in the medical chart on which she relied for her own diagnosis of concussion, Mr. Salim's counsel asked Dr. Goodwin "for your assessment as a doctor." *Id*. at 54:18-19.  Manifestly, understanding and assessing her patient's prior related complaints and condition as reported in a medical record on which she relied was of consequence to her own assessment.

Fed.R.Evid. 404(4) resolves the hearsay issue.  As for speculation, Dr. Goodwin testified that she has seen other "assault victims or other causes of trauma to the face or ears that cause tympanic membrane redness."  Defense counsel was free to cross-examine on this issue, and saw fit not to.

If the court permits the evidence at issue in this item, counsel will withdraw the question that drew the following objection, at #4, as duplicative:

4.  <u>Exhibit A at 51:20-22</u>.  Counsel asked Dr. Goodwin if a finding of redness in the right tympanic membrane would be consistent with a complaint of having been hit in the right ear. Dr. Godwin replied: "it could."   Counsel for Mr. Dahlberg objected: "Guess or speculation. That's not what was reported to the doctor."

As to the guess or speculation, the question was whether the symptom was consistent with the report of a blow to the ear.  The response "it could" is not a guess or speculation, merely professional  acknowledgment that there might also be other causes for the redness.  Counsel for Mr. Dahlberg did not probe the matter on cross-examination.[2]

---

[2] Other evidence will establish that such redness can also come from infection or from being in a pressurized cabin – and that Mr. Salim had experienced none of these conditions.

As for the contention that "That's not what he reported to the doctor," Dr. Goodwin then read into the record what Mr. Salim had reported at Fair Oaks Hospital: "Patient stating he was punched once in the right jaw and once in the right ear." *Id*. at 52:15-17.

    5. Exhibit A at 58:7-10. Dr. Goodwin testified that Mr. Salim's right maxilla (upper jaw bone) was sensitive to touch. *Id.* at 57:13 - 17. She also testified that the maxilla goes from the nose to close to the ear. *Id*. at 58:2-3. Her medical note did not, however, state exactly where on the maxilla she had touched Mr. Salim and found this tenderness. So counsel asked: "So it could be anywhere from below the nose to close to the ear?" and Dr. Goodwin replies, "It could be." *Id*. at 58:2-4. Defense counsel objected on ground of speculation and relevance.

    As to speculation, there is none. Dr. Goodwin's chart confirms that she palpated Mr. Salim's maxilla, without noting exactly where she did so. Her response to counsel's question to the effect that she could have touched any part of Mr. Salim's right maxilla was straightforward and not at all speculative.

    As for relevance, Mr. Salim will testify that he had pain in his right cheek from the time he was hit by Mr. Dahlberg. (When Officer Keith Allen came on the scene in response to Mr. Salim's 911 call, he found Mr. Salim holding his right cheek.) The fact that this pain persisted one week after the assault – even if its exact locus on the right side of his face does not appear in the hospital record – is manifestly relevant to this case.

    6. Exhibit A at 61:10-13. Two CT scans were taken at Fair Oaks Hospital: one of Mr. Salim's brain and upper head, and one of his face and jaw. The scan of the upper head showed no abnormalities. The scan of the face and jaw showed a fracture of the maxillary spine. The radiologist's reports of both scans were part of the Fair Oaks Hospital record that Dr. Goodwin

read in furtherance of her assessment of her patient. Responding to a cross-examination that focused on the fact that no abnormality was found in the scan of Mr. Salim's "head," Mr. Salim's counsel sought confirmation that it was the second scan, of the face and jaw, that was reported to have revealed the fracture. Defense counsel objected that Dr. Goodwin was "merely interpreting and reading what a radiologist may have said," and that her testimony was "hearsay." In fact, Dr. Goodwin "interpreted" nothing, and stated not what a radiologist "may have said," but what the Fair Oaks chart revealed that the radiologist expressly found: an avulsion fracture of the maxillary spine. Fed. R. Evid. 404(4) resolves any hearsay issue.

       7. <u>Exhibit A at 52:7-9</u>. Having established that Dr. Goodwin relied on the Fair Oaks record in making her own assessment, and in the face of defense counsel's challenge that Mr. Salim had not claimed of being hit in the ear, counsel asked Dr. Goodwin to read the report that Mr. Salim had given at that hospital, and she did so. This history, elicited in response to defense counsel's incorrect characterization of the record, was plainly relevant to her diagnosis of concussion. Defense counsel's objection that this was hearsay fails under Fed.R.Evid. 404(4).

       8. <u>Exhibit A at 53:5-8</u>. In response to counsel's inquiry as to whether Dr. Goodwin learned from the Fair Oaks chart whether Mr. Salim had made any complaints about being punched in the right ear, Dr. Goodwin replied, with reference to the portion of the chart she had just read, "Looking at this now, I believe I did." Defense counsel objected to what Dr. Goodwin "believed" and on the basis of hearsay.

      As to the "belief," it is clear that this is simply a matter of expression. Dr. Goodwin had just read out loud the very contention at issue, in the chart that she acknowledged she had read upon seeing Mr. Salim. "I believe I did" is not an amorphous expression of faith and hope. It is

an acknowledgment, plainly if modestly stated.  Had counsel for Mr. Dahlberg sought to test it, he could have cross-examined Dr. Goodwin on the matter.  This he did not do, for obvious reasons.

  The hearsay objection falls to Fed.R.Evid.404(4).

*

  Counsel acquiesces in all of defense counsel's objections stated in Dr. Hauda's *de bene esse* deposition (Exhibit B) and moves for leave to read the remaining testimony into evidence.

              Respectfully,

              MOHAMED M. SALIM,
                By counsel

Dated:   November 20, 2015

Counsel for Plaintiff:
//s// Victor M. Glasberg
Victor M. Glasberg, #16184
Victor M. Glasberg & Associates
121 S. Columbus Street
Alexandria, VA  22314
(703) 684-1100 / Fax: 703-684-1104
vmg@robinhoodesq.com
SalimMohamed\Pleadings\PlfMemMInLimGoodwinHauda

---

Certificate of Service

  I, Victor M. Glasberg, hereby certify that on this 20th day of November 2015, I electronically filed the foregoing Memorandum in Support of Motion *in Limine* Regarding Testimony of Drs. Goodwin and Hauda with the clerk of the court.

              //s// Victor M. Glasberg
              Victor M. Glasberg, #16184
              Victor M. Glasberg & Associates
              121 S. Columbus Street
              Alexandria, VA  22314
              (703) 684-1100 / Fax: 703-684-1104
              vmg@robinhoodesq.com
                Counsel for Plaintiff