IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MOHAMED M. SALIM,            )
                             )
        Plaintiff,           )
                             )
    v.                       )        No. 1:15-cv-468 (LMB/IDD)
                             )
EDWARD DAHLBERG,             )
                             )
        Defendant.           )

## MEMORANDUM OPINION

Before the Court is plaintiff Mohamed M. Salim's ("Salim" or "plaintiff") Application
for Award of Attorney's Fees and Costs, in which he seeks to recover $407,849[1] in attorneys'
fees for work performed through the trial, plus $8,575 for the time spent producing the fee
application and a total of $17,162 in costs. Appl. for Award of Att'y's Fees and Costs [Dkt. No.
189] 1, Jan. 6, 2016 ("Fee Appl."). Defendant Edward Dahlberg ("Dahlberg" or "defendant")
does not dispute that plaintiff prevailed on Count II of his complaint, which raised a claim under
a Virginia civil rights statute containing a fee shifting provision, and is therefore entitled to
recover reasonable attorneys' fees and costs associated with litigating that claim; however,
defendant strongly opposes the amount of fees and costs sought and argues that they should be
significantly reduced because both the hourly rates charged and hours worked are excessive. See
generally Opp'n to Appl. for Fees and Costs [Dkt. No. 204], Jan. 20, 2016 ("Def.'s Opp'n").

Specifically, defendant argues that the total fees should be reduced because plaintiff did
not prevail on three of the five counts in his complaint, plaintiff's counsel billed at excessively

---

[1] Plaintiff's reply recognizes that a billing entry on November 16, 2015 for lead counsel
conducting an eight-hour deposition and associated travel time was erroneous and agrees that the
amount requested for that item be withdrawn. Reply Mem. in Supp. of Pl.'s Appl. for Award of
Fees and Costs [Dkt. No. 205] 8, Jan. 21, 2016 ("Pl.'s Reply").

high hourly rates and over-litigated many issues, and plaintiff unnecessarily increased the costs of the litigation by embellishing the nature of his military service and by claiming that the defendant struck him and fractured his jaw. Defendant appears to suggest that plaintiff's counsel should be awarded no more than $129,500, an amount equivalent to the 37% contingent fee that they would have earned based on their agreement with plaintiff. Def.'s Opp'n, Ex. N, Decl. of Wayne G. Travell [Dkt. No. 204-14] ¶¶ 46-47, Jan. 20, 2016 ("Travell Decl."). Defendant also opposes the costs sought by plaintiff, arguing that the request for costs as a whole is untimely under this court's Local Civil Rules and that if the request is not time-barred, the recovery of costs should be limited to the filing fee and service of process costs. Def.'s Opp'n 22-24. For the reasons stated below, plaintiff's requested fee amount will be reduced to $151,634.00 and his requested costs will be reduced to $590.68.

## I.   BACKGROUND

Plaintiff, a Somali-born naturalized United States citizen, instituted this action against defendant, a white Christian born in the United States, alleging that defendant, motivated by "hatred of Arabs and Muslims," "direct[ed] outrageous verbal abuse at [plaintiff]" and "threaten[ed] his life and safety" during an early-morning cab ride on April 26, 2014. Compl. [Dkt. No. 1] ¶ 14, Apr. 9, 2015. Specifically, plaintiff alleged that after he picked defendant up in his cab, defendant engaged in a drunken rant directed at plaintiff and at Muslims more generally, which culminated in defendant punching plaintiff in the face and causing a hairline fracture of a bone in plaintiff's face that plaintiff later identified as his jaw. Id. ¶¶ 4-6, 10-13. Plaintiff recorded a portion of this interaction with his cell phone, and alleged that the recording included defendant's "verbal abuse and one incident of his striking [plaintiff]." Id. ¶ 9. He also claimed that subsequent punches occurred that were not captured by the recording.

Plaintiff's five-count complaint raised a federal claim under 42 U.S.C. § 1981 for violation of plaintiff's right to contract (Count I), as well as four Virginia state law claims: violation of a civil rights statute, Va. Code Ann. § 8.01-42.1 (Count II); assault (Count III); battery (Count IV); and intentional infliction of emotional distress (Count V). Id. ¶¶ 14-18. Defendant filed a Motion to Dismiss, Def.'s Mot. to Dismiss the Compl. Pursuant to Rule 12(B)(1) and (6) [Dkt. No. 4], May 4, 2015, which was granted with respect to Count I, and the Court exercised supplemental jurisdiction over the remaining state law claims. Order [Dkt. No. 24], June 4, 2015. Both parties' summary judgment motions were denied, Order [Dkt. No. 138], Oct. 30, 2015, and the action proceeded to a jury trial.

During trial, the Court granted the defendant's motion for judgment as a matter of law with respect to Count V, the intentional infliction of emotional distress claim. Trial Tr. 560:20-566:12. At the conclusion of the three-day trial, the jury found that the defendant had assaulted the plaintiff and had violated Va. Code Ann. § 8.01-42.1. Verdict Form [Dkt. No. 184] 1, Dec. 7, 2015. On those counts, the jury awarded plaintiff $100,000 in compensatory damages and $250,000 in punitive damages, for a total damages award of $350,000, id. at 2; see also Trial Tr. 733:19-734:1; however, the jury did not find that defendant had committed a battery, thereby rejecting plaintiff's allegations that defendant had punched him and fractured his jaw. Id. at 1.

## II.    DISCUSSION

Under the "American Rule," each side in a civil dispute is expected to pay its own attorneys' fees and expenses, unless a contractual or statutory provision provides otherwise. In re Crescent City Estates, 588 F.3d 822, 825 (4th Cir. 2009); see also Gilmore v. Basic Indus., 357 S.E.2d 514, 517 (Va. 1987) ("Ordinarily, in the absence of a statutory or contractual provision to the contrary, attorneys' fees are not recoverable by the prevailing litigant."). In the instant action,

the parties agree that plaintiff's success on Count II, the violation of Va. Code Ann. § 8.01-42.1,

entitles plaintiff to an award of reasonable attorneys' fees. The relevant portion of that statute

provides that "[a]ny aggrieved party who initiates and prevails in an action authorized by this

section shall be entitled to damages, including punitive damages, and in the discretion of the

court to an award of the cost of the litigation and reasonable attorneys' fees in an amount to be

fixed by the court." Va. Code Ann. § 8.01-42.1(B). As defendant argues, because the only

authority for attorneys' fees here is a state statute, Virginia law governs the determination of the

fee award. See Def.'s Opp'n 1.[2]

Although plaintiff may receive a discretionary award of fees and costs, he may only

recover those fees and costs incurred in litigating Count II and any claims that were interrelated

with that count, because it is the only successful claim that provides for an award of attorneys'

fees and costs to the prevailing party. See Manchester Oaks Homeowners Ass'n, Inc. v. Batt, 732

S.E.2d 690, 702 (Va. 2012) ("[I]n an action encompassing several claims, the prevailing party is

entitled to an award of costs and attorneys' fees only for those claims for which (a) there is a

contractual or statutory basis for such an award and (b) the party has prevailed."). Attorney time

and any expenses incurred on the unrelated claims raised by plaintiff are not recoverable,

regardless of plaintiff's success on those claims. The battery claim, which involved allegations

and proof distinct from those on which the other claims were premised, was unsuccessful.

---

[2] Plaintiff does not address this issue in any real depth, but argues that "[w]hether state or federal standards apply in setting attorneys' fees is a non-issue" because the Johnson/Barber factors are used by Virginia state courts and govern the fee analysis in either situation. Pl.'s Reply 7. Defendant contends that the Johnson/Barber factors do not apply under Virginia law. Def.'s Opp'n 19. Although the Court disagrees with plaintiff's characterization of the relevant case law, the relevant factors enumerated by the Virginia Supreme Court are largely analogous to the federal approach of calculating the lodestar and analyzing Johnson/Barber factors. See, e.g., Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998). Accordingly, the Court's approach, described infra, is in line with both state and federal standards.

Therefore, fees for work performed with respect to that claim are not recoverable. The fee petition submitted by plaintiff failed to recognize this limitation on recoverable fees, and therefore, the requested fees must be significantly reduced.

### A. Standard of Review

Plaintiff, as the applicant for the attorneys' fees award, bears "the burden of proving prima facie that the fees [requested] are reasonable and were necessary." Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998). To determine whether plaintiff

> has established a prima facie case of reasonableness, [the court] may consider, inter alia, the time and effort expended by the attorney, the nature of the services rendered, the complexity of the services, the value of the services to the client, the results obtained, whether the fees incurred were consistent with those generally charged for similar services, and whether the services were necessary and appropriate.

Id.

Federal courts employ an analogous approach that is useful "as a persuasive, nonconflicting guide in interpreting reasonable fees under Virginia law." GE Supply v. Thomas, 72 F.3d 1414 (Table), 1995 WL 456339, at *7 (4th Cir. Aug. 3, 1995) (unpublished). Pursuant to that approach, the "court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. In deciding what constitutes a 'reasonable' number of hours and rate . . . a district court's discretion should be guided by" the twelve factors enumerated in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in Barber v. Kimbrell's, Inc., 577 F.2d 216 (4th Cir. 1978).

Robinson v. Equifax Info. Services, LLC, 560 F.3d 235, 243-44 (4th Cir. 2009) (internal citation

omitted).[3] These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions
> raised; (3) the skill required to properly perform the legal services rendered; (4)
> the attorney's opportunity costs in pressing the instant litigation; (5) the
> customary fee for like work; (6) the attorney's expectations at the outset of the
> litigation; (7) the time limitations imposed by the client or circumstances; (8) the
> amount in controversy and the results obtained; (9) the experience, reputation and
> ability of the attorney; (10) the undesirability of the case within the legal
> community in which the suit arose; (11) the nature and length of the professional
> relationship between attorney and client; and (12) attorneys' fees awards in
> similar cases.

Id. (quoting Barber, 577 F.2d at 226 n.28). These "Johnson/Barber" factors substantially overlap

with those used by Virginia state courts in calculating a reasonable fee award; accordingly, the

Court will perform a lodestar calculation that incorporates the state and federal factors and

evaluates the rates charged and hours expended by plaintiff's counsel and personnel.

Furthermore, after performing the lodestar calculation, the court "should subtract fees for

hours spent on unsuccessful claims unrelated to successful ones" and should "then award[] some

percentage of the remaining amount, depending on the degree of success enjoyed by the

plaintiff." Id. at 244 (quoting Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008))

(internal quotation marks omitted). This federal requirement mirrors the Virginia Supreme

Court's approach. See Manchester Oaks, 732 S.E.2d at 702. To enable a court to perform this

calculation, a fee applicant must "maintain billing time records in a manner that will enable a

reviewing court to identify distinct claims." Greenwald Cassell Associates, Inc. v. Guffy, 450

---

[3] The Fourth Circuit, like the Virginia Supreme Court, places the burden on "the fee applicant to
establish the reasonableness of a requested rate." Robinson, 560 F.3d at 244 (quoting Plyler v.
Evatt, 902 F.2d 273, 277 (4th Cir. 1990)) (internal quotation marks omitted). "A fee applicant is
obliged to show that the requested hourly rates are consistent with 'the prevailing market rates in
the relevant community for the type of work for which he seeks an award.'" McAfee v. Boczar,
738 F.3d 81, 91 (4th Cir. 2013) (quoting Plyler, 902 F.2d at 277)) (alteration omitted).

S.E.2d 181, 182 (Va. Ct. App. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1982))

(internal quotation marks omitted).

### B. Hourly Rates

Plaintiff bases his fee application on the following personnel billed at the following

hourly rates:

|  | Position | Experience | Hourly Rate |
|---|---|---|---|
| Steven Albers ("Albers") | Paralegal/Investigator | 10 years | $110 |
| Maxwelle C. Sokol ("Sokol") | Associate Counsel | < 1 year | $250 |
| Charles Tierney ("Tierney") | Research Assistant | 23+ years | $285 |
| Victor M. Glasberg ("Glasberg") | Lead Counsel | 39+ years | $550 |

Fee Appl. 4. Plaintiff supports his position as to the reasonableness of the hourly rates and the

hours worked with a declaration from Glasberg, the lead counsel, and declarations from six local

lawyers—all of whom are well-known to and well-respected by the Court. Fee Appl., Ex. 1,

Decl. of Victor M. Glasberg [Dkt. Nos. 189-1, 189-2, 189-3], Jan. 6, 2016 ("Glasberg Decl.");

Fee Appl., Ex. 2, Decl. of Craig C. Reilly [Dkt. No. 189-4], Jan. 6, 2016 ("Reilly Decl."); Fee

Appl., Ex. 3, Decl. of Stephen W. Robinson [Dkt. No. 189-5], Jan. 6, 2016 ("Robinson Decl.");

Fee Appl., Ex. 4, Decl. of Bernard J. DiMuro [Dkt. No. 189-6], Jan. 6, 2016 ("DiMuro Decl.");

Fee Appl., Ex. 5, Decl. of Kenneth Labowitz [Dkt. No. 189-7], Jan. 6, 2016 ("Labowitz Decl.");

Fee Appl., Ex. 6, Decl. of Steven D. Rosenfield [Dkt. No. 189-8], Jan. 6, 2016 ("Rosenfield

Decl."); Fee Appl., Ex. 7, Decl. of Stephen G. Cochran [Dkt. No. 189-9], Jan. 6, 2016 ("Cochran

Decl.").

Each of the six declarations summarily concludes that the hourly rates charged and hours worked were reasonable. None of the declarations go into a detailed analysis of plaintiff's counsels' time sheets; instead, the declarants base their conclusions almost exclusively on a review of the pleadings and of Glasberg's declaration. For example, attorney Stephen W. Robinson avers that he has "a general familiarity with the legal and factual impediments faced by Mr. Glasberg and his client in bringing this case to such a successful conclusion," has reviewed Glasberg's declaration and believes Glasberg "has exercised significant billing judgment," and has concluded that "the efforts made by Mr. Glasberg and his team were appropriate for the case, and many times required by the litigation tactics and approach taken by the defendant." Robinson Decl. ¶ 10.

The most detailed affidavit is from attorney Craig C. Reilly ("Reilly"), who compares the rates charged by counsel to a matrix of hourly rates he created, which was adopted by the court in Vienna Metro LLC v. Pulte Home Corp., 786 F. Supp. 2d 1090 (E.D. Va. 2011). Reilly Decl. ¶¶ 16-17, 19. Reilly relies on the Vienna Metro matrix to opine that rates of $550-600 per hour are reasonable for attorneys with more than 29 years of experience, id. ¶¶ 22, 26;[4] however, Reilly acknowledges that he "[has] not undertaken an extensive examination of the pleadings, discovery materials, and trial record" and therefore has only "a general familiarity with the case." Id. ¶ 36.

In contrast, defendant supports his position as to the reasonableness of the hourly rates and hours worked with one declaration from Wayne G. Travell ("Travell"), another local

---

[4] Reilly also refers to the rates approved by the court in Taylor v. Republic Services, No. 1:12-CV-00523-GBL, 2014 WL 325169 (E.D. Va. Jan. 29, 2014) as well as to "the rates stated in the Laffey Matrices for the District of Columbia" as "valid comparable rates." Reilly Decl. ¶¶ 23, 26.

attorney equally well-known to and well-respected by the Court. See generally, Travell Decl. Although the defendant relies on one declaration, there is a significant difference between the Travell declaration and the six relied upon by plaintiff; namely, Travell actually reviewed counsels' billing records, provides a detailed analysis of those records, discusses the specific issues involved in the case, and evaluates the work performed with respect to those issues. See, e.g., id. ¶ 26 (discussing depositions of various non-party witnesses that in Travell's opinion "were largely devoted to Plaintiff's attempt to discover admissible evidence to support Plaintiff's battery claim"). Travell's extensive analysis and the resulting conclusion are sound and, in most respects, consistent with the Court's view of the reasonableness of this fee petition.[5] Accordingly, the Court has adopted much of Travell's analysis and conclusions as its own.

Defendant and Travell do not dispute that $110 is a reasonable hourly rate for Albers, the paralegal/investigator. Def.'s Opp'n 13-16 (omitting Albers from the discussion of reasonable rates); Travell Decl. ¶ 33 (discussing deducting some of Albers' billing entries but not disputing his fee rate). Moreover, Albers has a decade of experience working as a paralegal, and his rate is described by plaintiff's declarants as "within the norm in the legal community in which Mr. Glasberg and his colleagues practice" and even lower than the rate charged by some area firms. See Labowitz Decl. ¶ 6 (averring that the law firm where Mr. Labowitz practices charges $125 an hour for paralegal work). Accordingly, the Court finds that Albers' hourly rate is reasonable.

Although Travell does not dispute the $550 hourly rate charged by Glasberg, Travell Decl. ¶¶ 38-39 (opining that Glasberg's hours should be reduced but omitting any discussion of

---

[5] As this Court regularly instructs jurors, and actually instructed the jury in this civil action, it is the quality of the evidence, not the quantity, that should be considered in deciding factual questions. One piece of evidence in which the trier of fact has confidence may outweigh multiple pieces of evidence supporting an opposing conclusion if those pieces of evidence do not instill as much confidence as the one piece. Trial Tr. 696:2-17.

the rate charged for those hours), defense counsel argues that courts in this District and Circuit have expressed reluctance to award hourly rates of more than $500 and that clients are unwilling to actually pay such rates. Def.'s Opp'n 13-14. Defendant also emphasizes that the plaintiff did not agree to pay that hourly rate and in fact did not agree to pay any of the costs of the litigation or attorneys' fees other than an initial amount of $2,000, id. at 14; instead, plaintiff agreed that should his suit succeed, Glasberg would receive "the greater of an hourly fee or 37% of the gross proceeds of suit," and Glasberg advanced all the costs incurred past plaintiff's initial payment. Glasberg Decl. ¶ 54.

Defendant's argument is persuasive, particularly because Glasberg himself is unable to demonstrate that he has been awarded fees based on a $550 hourly rate by a court in this or any jurisdiction. Instead, Glasberg avers that he charged $500 an hour in 2014 and was awarded fees based on that rate in a case that began in mid-2014. Id. ¶ 59. He does not indicate when that case was resolved, nor does he provide any description of the nature of the case or its complexity. Although Glasberg avers that he currently charges his "paying" clients between $550 and $600 per hour, he has not presented any evidence of a court awarding him such a fee upon a fee application, and it is unclear how many of Glasberg's clients ever pay such fees, as Glasberg avers that his firm's "docket is almost entirely contingent fee litigation." Id. ¶ 44.

Moreover, the Fourth Circuit has characterized a rate of $585 for lead counsel as "excessive" and even "exorbitant." McAfee v. Boczar, 738 F.3d 81, 91 (4th Cir. 2013).[6] Another court in this district has characterized a rate of $420 per hour as "the upper limit for what counts as a reasonable rate for a very competent attorney in an uncomplicated . . . dispute." Route Triple

---

[6] In spite of its view of the fee, the McAfee court upheld the district court's fee award based on that excessive rate, because "the district court's findings to the contrary [were] entitled to . . . deference." McAfee, 738 F.3d at 91.

Seven Ltd. P'ship v. Total Hockey, Inc., 127 F. Supp. 3d 607, 621 n.12 (E.D. Va. 2015). In the

latter instance, the district court described the litigation as a "straightforward lease dispute" that

"did not present complex or novel legal issues and did not require extensive fact-finding," and

accordingly ruled that a rate of $575 per hour for a law firm partner with more than twenty years

of experience should be reduced to $420 per hour. Id. at 619-21. The court considered an

affidavit submitted by Reilly that relied on the Vienna Metro matrix, but rejected the affidavit

and its use of the matrix because Vienna Metro involved "complex commercial real estate

litigation" that was "significantly more complex" and difficult to litigate. Id. at 619-20.

 The Route Triple Seven court's reasoning and its rejection of the Vienna Metro matrix

are applicable here. Reilly's declaration confirms that the matrix only applies to "complex civil

litigation." Reilly Decl. ¶ 19. Unlike the complex dispute involved in Vienna Metro, the instant

litigation was not complicated. Other than the question of whether plaintiff could pursue his

claim under 42 U.S.C. § 1981, no unique legal questions were involved, and the primary

evidence concerning liability was in the recording made by plaintiff during the incident. In fact,

Mr. Glasberg recognized the essential simplicity of plaintiff's case in several communications he

sent to defense counsel, writing in one email that: "I would try this case tomorrow if I had to, so

long as the court's audio/visual equipment was operating," because "[t]he audio and video

remain, and so far as I am concerned, they are the case." Glasberg Decl., Doc. App. at 7, Email

from Victor M. Glasberg, Esq., to Demetry Pikrallidas, Esq. (Apr. 15, 2015) [Dkt. No. 189-2].

Later, he wrote that "[t]he audio and video (plus Mr. Dahlberg, Mohamed and his wife) ARE this

case," Glasberg Decl., Doc. App. at 9, Email from Victor M. Glasberg, Esq. to Stephen W.

Bancroft, Esq. and Nicholas J. Lawrence, Esq. (June 4, 2015) [Dkt. No. 189-2] (emphasis in

original), and he characterized the audio/video recording of the cab ride as 90% of plaintiff's

11

case. Glasberg Decl., Doc. App. at 11, Email from Victor M. Glasberg, Esq. to Demetry Pikrallidas, Esq. (June 5, 2015) [Dkt. No. 189-2] ("Judge Brinkema expressed the same view of the audio/video that I have—and that is 90% of my case. (The rest is Mohamed and his damages witnesses.)"). Glasberg's descriptions of the essence of this litigation are accurate.

The audio/video recording served as the primary evidence of defendant's liability for the assault, intentional infliction of emotional distress, and § 8.02-42.1 claims. No other evidence was needed to establish liability on those counts. In contrast, although plaintiff alleged that defendant struck him during the cab ride and after the 911 call, the video evidence was unclear, and plaintiff's allegations that defendant punched him multiple times after the video ended placed his credibility at issue. Any evidentiary complexities in the case arose from plaintiff's battery allegation, which was not supported by clear evidence and therefore injected unnecessary complexity into the case.

In addition, plaintiff's misrepresentations during his deposition and discovery about his military service also increased the case's complexity by expanding the scope of discovery and the time required to litigate this case. Specifically, they created the need to obtain more detailed discovery from Detective Erick Stallings, who was involved in the criminal investigation but not present on the night of the incident, see Def.'s Opp'n, Ex. C, Dep. of Casey Lingan [Dkt. No. 204-3] 31:4-8 ("Lingan Dep."), as well as from the Chief Deputy Commonwealth's Attorney Casey Lingan ("Lingan"), who decided not to pursue state criminal charges against Dahlberg due in part to concerns about plaintiff's credibility. Id. 54:8-14.[7] The credibility issue also led the parties to obtain evidence regarding cell phone records, how 911 calls are recorded, and how the

---

[7] Lingan testified during his deposition that he was also concerned about his ability to prove that defendant's motivation for his actions met the "very strict standard" for establishing a felony hate crime. Lingan Dep. 54:8-55:22.

plaintiff's cab company logged phone calls, as well as to taking depositions of defendant's sister Carolyn Proulx ("Proulx"), defendant's friend William Clair ("Clair"), and defendant's former criminal defense attorneys John Zwerling and Demetrios Pikrallidas ("Pikrallidas"). It also justified defense counsel pursuing discovery of medical records and testimony from treating physicians and medical experts. All of these discovery efforts were focused on the question of what, if anything, happened after plaintiff's audio/video recording ended.

Plaintiff disagrees with defendant's characterization of why this discovery was needed, arguing, for example, that the depositions of Proulx, Clair, and criminal defense counsel contain "virtually no questioning about a battery" and instead focus "on Mr. Dahlberg's state of mind generally and identifying his own inculpatory statements regarding his interaction with Mr. Salim, as communicated to each of these interlocutors." Pl.'s Reply ¶ 6. That argument is unpersuasive because plaintiff's cell phone recording provided sufficient evidence of defendant's state of mind. Instead, the only logical reason for pursuing this extended discovery was to obtain inculpatory evidence regarding events that were not recorded—namely, the alleged battery, a claim not entitling plaintiff to an award of fees.

Glasberg further undermines his arguments regarding the complexity of the action when he avers that Lingan's decision not to pursue the state criminal charges against Dahlberg presented the kind of "litigation difficulties" that he typically avoids. Glasberg Decl. ¶ 21. Plaintiff and his counsel injected those difficulties into the litigation by maintaining the "add-on" battery claim and thereby creating a credibility issue. Although Glasberg blames defendant for increasing the complexity of the litigation by challenging the battery count, the condition of plaintiff's jaw, and plaintiff's credibility, see id. ¶ 51, defendant's strategies were reasonable responses to plaintiff's battery claim and lack of truthfulness, the latter of which led Lingan to

13

dismiss the state criminal charges against defendant because "forensic evidence allegedly proved that Mr. Salim was lying." Id. In other words, because the prosecutor did not believe that plaintiff was being truthful about the battery, in part because of forensic evidence garnered from plaintiff's cell phone, the state criminal charges were dropped. See Lingan Dep. 87:3-88:10.

Glasberg complains that Lingan's decision encouraged defendant to pursue a "forensic impossibility" defense that over-complicated the case, before eventually abandoning the defense at trial. Glasberg Decl. ¶¶ 33, 36. Contrary to that assertion, defendant never abandoned this defense, nor did plaintiff successfully discredit defendant's forensic evidence. Instead, during trial, the evidence demonstrated that plaintiff's 911 call was logged as occurring several seconds before the video recording ended. Trial Tr. 577:8-578:5, 594: 21-595:3, 597:2-13. Glasberg argued that this discrepancy made the forensic evidence irrelevant and unreliable, id. 580:25-581:12; however, defendant presented evidence in the form of expert testimony by Detective Jason Friedman that it was possible for there to be a discrepancy of several seconds between plaintiff's iPhone's internal clock and the 911 call log. Id. 582:22-584:12. The jury was left to decide how to weigh the evidence, and its rejection of the battery claim indicates that the jury was persuaded by the defendant's evidence.

Accordingly, by pursuing discovery with respect to the cell phone and presenting evidence about the cell phone during the trial, defendant was simply engaging in an appropriate defensive tactic—one that played at least some part in persuading the jury that defendant was not liable for battery. In this vein, even if the Court were to credit Glasberg's assertion that he simply wanted to use the battery claim to help establish that plaintiff suffered emotional distress from the incident and from being told he had a broken jaw, Glasberg Decl. ¶¶ 22-26, defendant was

entitled to defend against that claim by insisting that adequate discovery on the issue be conducted.

Moreover, concerns about plaintiff's credibility arose out of plaintiff's choices and not because of any inappropriate actions by defendant. When Lingan was deposed, he explained that he had additional concerns about plaintiff's credibility apart from the issues with the cell phone and 911 call, in part because plaintiff had changed his allegations after calling 911 and provided different accounts of how many times plaintiff had punched him. Lingan Dep. 87:5-18. Detective Keith Allen, the responding officer, testified at trial that between the night of the incident and an interview conducted several days later, plaintiff's allegations changed. Trial Tr. 73:5-24. Such inconsistencies were highly relevant to defendant's efforts to defend against the battery claim, particularly when the question of what occurred after the recording ended hinged on a credibility contest between the parties.

Additional concerns about plaintiff's credibility arose as this litigation progressed, with plaintiff admitting during trial that he had repeatedly misrepresented the nature of his military service, about which he inaccurately testified during his sworn deposition. Id. 452:18-453:1; 460:13-462:7; 468:1-7. As defendant appropriately argued, id. 675:6-676:6, this dishonesty was relevant evidence for the jury in assessing the credibility of plaintiff's assertions, particularly those that were not supported by the audio/video recording. By raising these issues, defendant engaged in a legitimate and successful defensive strategy that was an appropriate response to plaintiff's battery claim. Accordingly, if any party made the litigation more complex than necessary, it was plaintiff, by pursuing the battery claim and by not being truthful during discovery, and therefore, the fees resulting from these complications are not recoverable, nor do these complexities justify awarding Glasberg a higher hourly rate.

Glasberg also argues that the case was an undesirable one and was problematic "for substantive and tactical reasons arising out of the dismissal of all charges against Mr. Dahlberg" by the state prosecutor. Id. ¶ 57. To the extent the publicity generated by this action contributed to a negative reaction towards plaintiff by his own Somali-American community, see Trial Tr. 420:15-421:1, it was the plaintiff who chose to give TV and other interviews that drew public attention to his case. Although Glasberg's willingness to fight bigotry is commendable, it was his client's behavior and public statements about what happened that made the case problematic. That factor does not support a higher hourly rate.

Under both Virginia and federal standards, therefore, the straightforward nature of the instant litigation, as well as the lower rates previously awarded to Glasberg and to similarly qualified attorneys, demonstrate that Glasberg's hourly rate should be reduced for the purposes of this fee award. Accordingly, Glasberg will be awarded fees based on an hourly rate of $500, the rate for which he was most recently awarded fees.

Both defendant and Travell dispute the hourly rate billed for Sokol. Defendant argues that a $250 hourly rate is excessive, considering that Sokol had just graduated from law school and was not eligible to be admitted to either the Virginia bar or the bar of this court until after the trial was over. Def.'s Opp'n 16. Travell characterizes Sokol's status as more similar to that of a law clerk than that of an associate, and opines that a $125 hourly rate is a reasonable rate for personnel in that position. Travell Decl. ¶ 36. These arguments are persuasive. Although Sokol graduated from a reputable law school, there is no indication in the record of her being on law review, receiving any special awards, or completing a judicial clerkship, any of which might support a higher hourly rate. The Court does not doubt that Sokol contributed to plaintiff's litigation efforts; however, the nature and value of the services she was able to perform on his

16

behalf were limited by her lack of experience and not being barred in Virginia or in this court.
Accordingly, Travell's recommendation of a $125 hourly rate will be used to calculate the fees
incurred for Sokol's work.

The defendant also strongly opposes the $285 hourly rate billed for Tierney. Def.'s
Opp'n 15-16. Defendant points out that although plaintiff described Tierney's years of practice
as an attorney, he failed to provide the reason why, in Glasberg's words, Tierney "stopped
practicing law." Id. at 15 (quoting Glasberg Decl. ¶ 46). In fact, Tierney gave up his bar licenses
after being convicted of a serious federal felony and serving several years in prison. Travell
Decl. ¶ 34; Def.'s Opp'n, Ex. H [Dkt. No. 204-8], Jan. 20, 2016. Based on that background,
Travell avers that it is questionable "whether any fee paying client in this market would agree to
allow Mr. Tierney to work on his or her matters at any price." Travell Decl. ¶ 34.

In addition, Travell describes some of the work performed by Tierney as the kind
normally done by a paralegal—for example, Tierney's time sheets reflect work for digesting
deposition transcripts, organizing material for exhibit books, and even buying trial supplies. See
Glasberg Decl., Doc. App. at 56-61. Similar work was performed by Albers, the paralegal, at a
much lower hourly rate. Id. at 55-56. The third Johnson/Barber factor and the Virginia factors of
"the nature of the services rendered" and "value of the services to the client" therefore indicate
that Tierney's hourly rate should be much lower, particularly because there would appear to be
no good reason for using more expensive personnel for such work. Travell opines that, at best,
Tierney's hourly rate should be evaluated at a senior paralegal rate of $185 an hour, Travell
Decl. ¶ 34, a figure the Court finds to be much more reasonable given Tierney's bar status.
Therefore, Tierney's hourly rate will be reduced to $185.

### C. **Hours Expended**

Plaintiff's fee request is based on 110.70 hours for Albers, 269.40 hours for Sokol,

410.30 hours for Tierney, and 515.20 hours for Glasberg. Glasberg Decl. ¶ 44. These numbers do

not reflect plaintiff's additional request for fees for the work done on the fee application, for

which he seeks an additional 10 hours for Glasberg, 10 hours for Sokol, and 2 hours for Tierney.

Glasberg Decl. ¶ 60. Although plaintiff has not sought reimbursement for hours worked by a

legal fellow and a legal intern who also worked on his case, and although plaintiff voluntarily

made a 15% reduction across the board to the hours for which he seeks an award, id. ¶ 44, a

thorough review of these time records establishes that a significant amount of the time billed is

not recoverable.

Specifically, all work related to the unsuccessful battery claim must be deducted. As

discussed above, the battery claim was based on separate evidence and allegations and placed

plaintiff's credibility directly at issue. Although Glasberg attempts to argue that the battery count

is indistinguishable from plaintiff's successful claims, in doing so he inaccurately minimizes the

importance of the battery claim to this litigation and mischaracterizes the nature of the litigation.

To argue that the issue of "whether Mr. Dahlberg punched Mr. Salim hardly arose except as a

result of the defense insistence that Mr. Salim's treating doctors be deposed," Pl.'s Reply ¶ 7, is

simply inaccurate; the issue arose because plaintiff included a claim for battery in his complaint,

which, as Glasberg implicitly acknowledges, required discovery beyond plaintiff's cell phone

recording and injected credibility issues that would not otherwise have been involved.

Furthermore, by arguing that he "presented Mr. Salim's emotional distress as the heart of

the case" and "devoted virtually no attention to whether Mr. Salim suffered physical injuries,"

Pl.'s Reply ¶¶ 1, 4, Glasberg conflates liability and damages. Although plaintiff did not seek

18

damages for physical injury and did not present evidence of medical bills or lost wages, he asserted that he suffered damages in the form of severe emotional distress because he was not just verbally assaulted, but was also battered. As discussed above, the assault was clear from the audio/video recording, while the battery was not, and therefore discovery related to that claim consumed a large amount of the parties' time that otherwise would not have been required. Accordingly, the Court rejects plaintiff's characterization of the battery claim and its role in the litigation, and accepts Travell's statement that "[a]lthough Mr. Glasberg goes to great effort to argue that little or no work went into the battery claim, the record in this case proves otherwise." Travell Decl. ¶ 22. For these reasons, plaintiff cannot recover fees or costs for any discovery, depositions, motions, or trial testimony associated with the battery claim.

The plaintiff is also not entitled to recover for unsuccessful efforts. For example, plaintiff opposed defendant's Motion to Dismiss. See Pl.'s Mem. in Opp'n to Mot. to Dismiss [Dkt. No. 10], May 14, 2015. A significant portion of that motion addressed plaintiff's federal civil rights claim under 42 U.S.C. § 1981, arguing that plaintiff failed to state a claim under that statute and further arguing that upon dismissing that federal claim the Court should also dismiss the remaining state law claims. See Def.'s Mot. to Dismiss the Compl. Pursuant to Rule 12(B)(1) and (6) [Dkt. No. 4], May 4, 2016. The defendant prevailed with respect to the § 1981 claim and therefore prevailed on the primary issues raised by his motion and addressed by plaintiff's opposition. Order [Dkt. No. 24], June 4, 2015. Although plaintiff successfully convinced the Court to exercise supplemental jurisdiction over the remaining state law claims after dismissing the § 1981 claim, id., plaintiff's entire judgment is now vulnerable to being overturned on appeal because defendant contends that the faulty federal claim deprived the Court of subject matter

19

jurisdiction in the first instance. See Def.'s Rule 59 Mot. [Dkt. No. 188], Jan. 5, 2016.[8]

Accordingly, plaintiff will not be awarded fees for work performed opposing defendant's

motion.

Plaintiff is also not entitled to fees for any time spent drafting or arguing his Motion for

Partial Summary Judgment on Liability [Dkt. No. 95], Oct. 7, 2015, which was denied, Order

[Dkt. No. 138], Oct. 30, 2015 ("Oct. 30 Order"), nor can he recover fees for most of the time

spent on an omnibus Motion in Limine [Dkt. No. 97], Oct. 7, 2015, in which he sought to

prevent defendant from raising eight issues during trial and also requested that plaintiff be able to

admit three types of evidence. Pl.'s Mem. in Supp. of Mot. in Limine [Dkt. No. 98], Oct. 7,

2015. As to the eight matters that plaintiff sought to exclude, he gained a partial victory on only

two: (1) the defendant's use of videos of plaintiff's television interviews would be limited to

what plaintiff said and would omit what the Council on American-Islamic Relations' attorney

said, and (2) evidence of the state criminal charges would be limited to evidence that the charges

were filed but would not include any evidence about the dismissal of those charges. Tr. of Mots.

Hr'g [Dkt. No. 147] 17:22-19:12, 31:22-33:5, Oct. 30, 2015; see also Oct. 30 Order. Plaintiff's

request to admit his medical records without accompanying testimony from the doctors who

produced them was denied, as was his request to admit the texts and emails of defendant's wife,

Brenda Dahlberg. Id. 47:5-12, 55:18-56:9. Although the latter ruling included a caveat that if

defendant opened the door the admissibility of his wife's emails and texts could be reconsidered,

that ruling did not constitute a victory for plaintiff. Id. 47:10-12. Moreover, the Court voiced

---

[8] Defendant has already noticed an appeal to the Court of Appeals for the Fourth Circuit. Notice
of Appeal [Dkt. No. 213], Apr. 29, 2016.

concern that the evidence sought to be admitted was "just cumulative" and not critical to plaintiff's case.[9] Id. 45:2-7.

After the initial ruling on his Motion in Limine, plaintiff sought reconsideration of the ruling that evidence of defendant's and his family's hardships was admissible with respect to defendant's effort to reduce any punitive damages. See Mot. for Clarification or Reconsideration [Dkt. No. 142], Nov. 4, 2015 (stating that plaintiff "seeks clarification of the circumstances under which such evidence might be proffered, and in the alternative, reconsideration of the court's ruling in this regard"). That motion was denied. Order [Dkt. No. 16], Nov. 20, 2015 ("Nov. 20 Order"). Plaintiff's opposition to the defendant's four motions in limine was also largely unsuccessful. Two of defendant's motions were granted over plaintiff's opposition, one was granted in part and denied in part, and only one was denied. Oct. 30 Order. Finally, plaintiff also unsuccessfully sought leave to provide earphones to the jury during deliberations and to bring a second laptop into the courtroom. Order [Dkt. No. 175] 1, Dec. 1, 2015 ("Dec. 1 Order"). Work performed with respect to these motions and issues is therefore not recoverable.

Furthermore, much of plaintiff's counsels' billing records are not sufficiently detailed. In particular, Sokol and Tierney frequently use what Travell calls block-billing, which fails to distinguish between time spent on one task or issue as opposed to another and instead combines multiple tasks in one billing entry.[10] The burden is on the plaintiff to establish the reasonableness

---

[9] Not only did the communications from Brenda Dahlberg appear to be non-critical and "cumulative," but the amount of time plaintiff's counsel spent researching and writing on the marital communication privilege was clearly excessive. Sokol recorded at least 22 hours and Tierney recorded approximately 25.5 hours for work related to the relatively simple question on which plaintiff did not prevail. This is a clear example of over-litigating.

[10] In contrast, Albers' records contain the least amount of block-billing and are therefore deemed to be the most reliable.

of his attorneys' fees and to "maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." Greenwald Cassell Associates, Inc. v. Guffy, 450 S.E.2d 181, 182 (Va. Ct. App. 1994) (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1982)) (internal quotation marks omitted); see also Chawla v. BurgerBusters, Inc., 499 S.E.2d 829, 833 (Va. 1998). Accordingly, if a billing entry includes a description of both recoverable and non-recoverable work but does not identify the amount of time spent on each type of work, the entire entry will be deducted from plaintiff's recoverable hours.

Lastly, beyond the block-billing problem, the accuracy of the submitted time sheets is dubious. For example, there are multiple entries in paralegal Albers' time sheets describing conferences with the other personnel who are billing for work on this lawsuit, but when their records are checked, they show no entry for a conference with Albers. The Court views Albers' records as the most accurate, given that his are the most detailed; accordingly, these omissions from other personnel's time sheets raise doubts about their accuracy. As another example, Sokol's time sheets contain a billing entry for a 3-hour "[t]rial prep. meeting," but the entry does not identify who the meeting was with, and none of her coworkers' time sheets contain a similar entry on the same date. Even when two individuals list time spent in the same meeting or conference, the time entry is not always consistent. For example, on November 29, Sokol's time sheet contains an entry for a 3-hour conference with plaintiff, while Glasberg's time sheet contains an entry for a 4-hour client conference that he explicitly states was with co-counsel. These recurring issues undermine the reliability of these time sheets.

1.  **Steven Albers**

Based on the considerations discussed above, of the 110.70 hours billed by Albers, 49.40

hours are being deducted, leaving 61.30 hours for which fees are recoverable. The hours being

deducted are shown in the following chart:

| Date | Work Description | Hours |
|---|---|---|
| September 1 | Digest Friedman depo. | 1.00 |
| September 2 | Digest Friedman depo. | 2.50 |
| September 3 | Digest Friedman depo. | 1.00 |
| September 4 | Analyze phone records | 0.50 |
| September 8 | Create video stills and time mark video transcript | 4.00 |
| September 9 | Create/edit/print video stills and time mark transcript | 2.70 |
| September 15 | Edit video/photo & print/copy | 7.40 |
| September 16 | Digest Stallings depo | 0.50 |
| September 17 | Digest Stallings depo | 3.00 |
| September 29 | Digest Stallings depo | 1.70 |
| October 3 | To/from Fairfax Court to review court records; conf. to review phone records | 4.50 |
| October 6 | Review client cell phone records; telecon. w/ T-Mobile | 0.60 |
| October 7 | Telecon., T-Mobile & memo re phone records; search for doctor address for subpoenas; conf., Tierney | 1.20 |
| October 9 | Search internet for doctors' addresses for subpoenas | 0.90 |
| October 13 | On-line research re doctors' email address | 0.30 |

| October 14 | Online search & telecom., VA Lawyers Weekly re Maududi v. Pergolizzi, conf. w/ Glasberg re doctor subpoenas | 0.70 |
|---|---|---|
| October 15 | Serve Hauda subpoena, attempt service of Goodwin subpoena, telecom. w/ Inova Fairfax Hosp. re subpoenas | 3.50 |
| October 16 | Telecon. w/ Inova Fairfax Hosp. re Goodwin subpoena | 0.10 |
| October 20 | Digest Lingan depo. | 0.80 |
| October 21 | Digest Lingan depo. | 0.20 |
| October 23 | Telecons. w/ Inova corp. office & Dr. Goodwin re subpoena; serve Goodwin subpoena | 1.70 |
| October 26 | Digest Lingan depo. | 2.40 |
| October 27 | Digest Lingan depo. | 2.60 |
| October 28 | Digest Proulx and Clair depos. | 2.60 |
| November 18 | Prep. trial notebooks / CD's / laptop | 3.00[11] |
| | TOTAL | 49.40 |

### 2. Maxwelle C. Sokol

In addition to the issues discussed above, the Court agrees with Travell's recommendation that none of Sokol's time attending hearings, depositions, or the trial should be awarded because as an unlicensed attorney, she did not, and could not, participate in those proceedings. See Travell Decl. ¶ 36. Moreover, Glasberg was the only licensed attorney present at those proceedings, which means Sokol's time entries are duplicative of Glasberg's. Similarly,

---

[11] There appear to be duplicate entries for these three hours of work on November 18; accordingly, one 3-hour entry is being deducted.

where Sokol's time entries for conferences with plaintiff or certain of plaintiff's witnesses overlap with Glasberg's billing entries, she will not be awarded fees. Although the Court does not doubt that Sokol's presence was helpful to Glasberg's representation of his client, she did not and could not serve as plaintiff's counsel before her admission to the state bar. Accordingly, her presence at these conferences could only have been as an observer and assistant. Additionally, Glasberg avers that both Tierney and Sokol sat in on trial preparation meetings with plaintiff, serving as "jurors" while Glasberg prepared plaintiff for his direct examination. Glasberg Decl. ¶ 45. Three people were not necessary for this kind of work. Because Glasberg will recover for the hours he spent in these conferences, it is duplicative and unreasonable to also award those hours to Sokol and Tierney.

Sokol's time sheets also demonstrate that she spent an excessive amount of time on straightforward issues, most likely due to her lack of experience. In particular, the hours spent by Sokol (as well as by Tierney and Glasberg) on voir dire issues and jury instructions were clearly excessive. Plaintiff's first proposed voir dire was not well proof read, was repetitive, and included duplicates of certain questions.[12] Pl.'s Proposed Voir Dire [Dkt. No. 154], Nov. 19, 2015. Plaintiff filed a revised set of questions, in part because of errors in the first set, and then had to file a revised version of the revised proposed voir dire because of errors in the first revised filing. Pl.'s Revised Proposed Voir Dire [Dkt. No. 161], Nov. 23, 2015; Pl.'s Revised Proposed Voir Dire [Dkt. No. 164], Nov. 24, 2015. Much of the revised proposed voir dire remained fairly repetitive, and none of the proposed questions were so unique as to justify the amount of time billed.

---

[12] For example, the proposed voir dire contained two separate questions about the use of foul language. Pl.'s Proposed Voir Dire ¶¶ 12, 19.

The time spent on jury instructions was even more excessive. Between Sokol, Tierney, and Glasberg, counsel's time sheets reflect approximately 70 hours of work, much of it block-billed, on proposed instructions for the three claims that went to the jury: the assault claim, the battery claim, and the Va. Code Ann. § 8.01-42.1 claim. Despite there being model jury instructions for nearly every issue in this case, plaintiff injected unnecessary verbiage into his proposed instructions. See generally, Pl.'s Proposed Jury Instructions [Dkt. No. 165], Nov. 24, 2015. For example, plaintiff proposed a battery instruction containing one sentence from the Virginia Model Jury Instructions, which he combined with language from a Virginia Supreme Court case and language from the Restatement (Second) of Torts, overly emphasizing the "touching" aspect of battery. Id. at 4. In this way, plaintiff's proposed instructions consistently over-complicated the instructions by melding together language from various sources, instead of simply using the straightforward model instructions. As a result, these proposed instructions elicited a number of substantive objections from defendant, unnecessarily increasing the work that both parties and the Court had to do with respect to jury instructions. See generally, Def.'s Objection to Pl.'s Proposed Jury Instructions [Dkt. No. 172], Nov. 30, 2015.

In contrast, defendant's proposed jury instructions were almost entirely form instructions and were largely used by the Court. See generally, Def.'s Proposed Jury Instructions, Ex. A [Dkt. No. 163-1], Nov. 23, 2015; Trial Tr. 689:6-707:17. In deciding to use primarily form instructions, the Court also rejected plaintiff's argument that his proposed instructions could not be withheld from the jury if they were correct statements of law. See Praecipe [Dkt. No. 174], Dec. 1, 2015; Dec. 1 Order at 2. Accordingly, the excessive time spent on those instructions was unnecessary and unsuccessful, and it will be deducted from Sokol's billing entries.

Sokol's billing entries also suffer from repeated block-billing and vague descriptions; therefore her hours must be reduced because the way in which she recorded her time does not provide a sufficient description of the work performed. For example, Sokol's time entries describing "research and draft motion in limine" does not show how much time was spent on successful claims versus unsuccessful issues related to the battery count, while other entries, such as one for "[f]urther research & drafting" are insufficiently detailed to identify what work was performed and on which issues. Where her descriptions do not apportion the time and do not demonstrate how much time was attributable to recoverable work, none of the time will be awarded. For these reasons, of the 269.40 hours billed by Sokol, 232.90 are being deducted, leaving 36.50 hours for which fees are recoverable. The hours being deducted are shown in the following chart:

| Date | Work Description | Hours |
|------|------------------|-------|
| August 24 | Research & draft motion in limine | 2.00 |
| August 25 | Research & draft motion in limine | 3.00 |
| August 26 | Lingan depo. | 5.00 |
| August 27 | Research/draft motion in limine | 7.00 |
| August 28 | Request for admissions hearing; draft motion in limine | 5.80 |
| September 1 | Attendance at Proulx depo. & Clair depo. | 3.60 |
| September 4 | Research/draft motion in limine; conf. w/ client | 6.80 |
| September 9 | Further research &drafting | 4.30 |
| September 10 | Attendance at Dahlberg depo.; Salim motion in limine | 8.40 |

27

| September 11 | Motion in limine re Dahlberg's hardship following media coverage/Salim's army service | 6.50[13] |
|---|---|---|
| September 14 | Review/revise motion in limine – hardship evidence re client credibility | 8.30 |
| September 16 | Pretrial hearing; motion in limine | 7.00 |
| September 17 | Research/draft motion in limine re credibility determinations & marital privilege | 6.30 |
| September 18 | Finalize draft motion in limine | 5.00 |
| September 24 | Correct sites [sic]; further research | 6.00 |
| September 25 | Revamp marital privilege/holistic edits | 4.00 |
| October 1 | Conf. with Amri, cite check motion in limine & MSJ | 6.80[14] |
| October 5 | Finalize motions; conf. w/ client | 6.50 |
| October 14 | Review/discuss def.'s motion in limine; begin draft response | 3.00 |
| October 16 | Response to motion in limine | 2.30 |
| October 20 | Draft jury instructions | 2.00 |
| October 21 | Reply to def. opposition to motion in limine re Hauda hearsay & motive to fabricate | 8.60 |

---

[13] Plaintiff's effort to exclude evidence of the Dahlberg family's hardships was unsuccessful. Tr. of Mots. Hr'g 21:14-23:17. It is also unclear what work Sokol did with respect to plaintiff's military service; however, that service was a major credibility issue for plaintiff, and plaintiff's effort to include exhibits related to his military service was only partially successful. Id. 16:9-17:4. Moreover, this billing entry does not distinguish between time spent on one issue as opposed to the other. Accordingly, the entire entry has been deducted.

[14] Saara Amri ("Amri") was plaintiff's mental health expert witness. As discussed above, the two hours billed to conference with Amri overlap with Glasberg's billing entries, and two people were not required for this task.

| October 22 | Reply to def. opposition to motion in limine re marital privilege waiver & texts as hearsay | 9.20 |
|---|---|---|
| October 23 | Further research re marital privilege; revise reply | 5.00 |
| October 26 | Research re voir dire – draft voir dire | 2.00 |
| October 28 | Draft voir dire; research NLP | 2.80[15] |
| October 29 | Meeting re MSJ/motion in limine hearing | 2.60 |
| October 30 | Attend hearing re MSJ & motion in limine | 2.00 |
| November 2 | Research/draft response to def. mot in limine | 4.00 |
| November 3 | Conf., re voir dire; research & memo re punitives & def.'s hardship as mitigation | 7.30 |
| November 4 | Research & draft jury instructions & rules of the road | 7.50 |
| November 5 | Jones depo; rules of road & jury instructions | 6.20 |
| November 9 | Research punitives/net worth burden | 5.50[16] |
| November 10 | Def.'s failure to examine phone; judicial notice re F-n-A | 4.30[17] |

[15] The entry for "research NLP" is not clearly related to any issues in the case. It may be related to the fact that the state criminal charges were nolle prosequied, in which case this work is related to plaintiff's credibility problems and is not recoverable. Because this entry is not sufficiently detailed, it will be deducted in its entirety.

[16] Although the exact nature of this work is unclear, it was performed during the time that plaintiff was pursuing his unsuccessful motion regarding the admissibility of defendant's hardship with respect to punitive damages; therefore, it will be deducted.

[17] The Court is not able to discern what "judicial notice re F-n-A" means; regardless, the time spent on this issue is not specifically identified and is instead block-billed with work related to the defendant's "failure to examine [plaintiff's] phone," an issue related to the battery claim and the forensic evidence regarding plaintiff's phone. Accordingly, the entire entry will be deducted.

| November 13 | Joint motion re laptops; def. hardship [sic] as mitigating punitives | 5.20[18] |
| November 19 | Revise jury instructions; Hauda & Goodwin; Reptile | 4.40 |
| November 20 | Attend reconsideration hearing | 1.00 |
| November 22 | Client prep. | 3.50 |
| November 24 | Reply motion re doc. depo. testimony – revise | 2.00 |
| November 29 | Conf. w/ client | 3.00 |
| December 1 | Researched cases referenced in def. jury instruction [sic] objections; client trial prep. | 8.20 |
| December 2 | Attendance at trial | 9.00 |
| November 3 | Attendance at trial | 10.00 |
| November 4 | Attendance at trial | 10.00 |
| | TOTAL | 232.90 |

### 3.  Charles Tierney

Tierney's billing entries suffer from all the issues discussed above, and are almost always

block-billed. Like Sokol, Tierney spent excessive time on the proposed voir dire and proposed

jury instructions, and he participated in a number of client conferences where Glasberg and

Sokol were also present, making those hours duplicative. Also like Sokol, Tierney's hours spent

attending trial are not recoverable, because he was not able to participate in the trial proceedings.

For all these reasons, of the 410.30 hours billed by Tierney, 325.20 are being deducted, leaving

---

[18] Although the parties' joint motion for use of laptops and electronic equipment was successful, plaintiff's motion to clarify or reconsider the Court's ruling regarding defendant's hardship was not, see Nov. 20 Order, and there is no way to distinguish the time spent on the former issue as opposed to the latter.

85.10 hours for which fees are recoverable. The hours being deducted are shown in the following chart:

| Date | Work Description | Hours |
|---|---|---|
| June 3 | Letter to Fairfax Hosp. re records; review docs., emails from clients [sic]; draft responses to doc. requests #2; letter to oral surgeon re records | 8.0 |
| June 15 | Conf., client; telecom. Fairfax Hosp. re records; review & process docs. from Fairfax CWA & NVCOFIS | 5.20 |
| June 17 | Review Fair Oaks med. records; telecom., Fairfax Hosp. re records; telecom., Dr. Jones . . . re possible testimony | 2.50 |
| June 22 | Conf., client; revise & finalize interrog. responses; process docs. from client re military & from Faifax Hosp.; telecon., Dr. Morse | 6.30 |
| June 23 | Telecon., Carolyn Proulx; memo re same; telecon., CSB & NVFS providers; telecon., client re OMPF & interrog responses | 3.0 |
| June 24 | Review & process docs. from Comm. Atty; telecom., Fairfax GDC re Dalberg criminal assault case file; review police transcript of Salim IV; review Medics U.S. records; process client med. records; fax med. records request to Army | 4.30 |
| June 25 | Review records subpoenaed by defense from health care providers; review records produced by Commwlth atty.; prep for client meeting | 2.00 |

| June 26 | Client meeting; review police doc. production; update doc. production; telecon., Amri | 6.00 |
| June 29 | Client interview; review transcript of chat IV w/ police; update client doc production | 3.50 |
| June 30 | Review police & defense production; examine officer investigative notes; conf., VG re processing defense production & mistakes therein | 5.00 |
| July 14 | Research ICD-9 narrative description of client diagnosis @ Fair Oaks Hosp.; conf., VMG, Turkevich re add'l discovery; prep for meeting w/ Lingan | 2.00 |
| July 15 | Begin digest of Police IV w/ client; process & organize docs. from defes., police, CA, & Zwerling | 4.00 |
| July 17 | Digest Police IV w/ Salim | 2.50[19] |
| July 21 | Prep for Pikrallidas & Mrs. Dahlberg depos.; review Pikrallidas doc. production; outline questions for depos. | 2.00 |
| July 21 | Prepare Pikrallidas depo. questios [sic]; digest client interview with police | 4.00 |
| July 22 | Digest client interview w/ police | 3.00 |
| July 24 | Digest client depo.; conf., VMG, Turkevich re criminal charges stipulation | 2.50 |
| July 25 | Conf., VMG re to-do; letter to NVCOF re x-rays; complete Salim depo. digest | 4.00 |
| July 27 | Conf., Turkevich re T-Mobile subpoena; telecons., T-Mobile | 2.50 |

---

[19] As discussed above, work of this nature would not have been necessary absent the battery claim and absent questions of plaintiff's credibility and changing allegations with respect to the battery claim.

| | | |
|---|---|---|
| | reps.; email to VMG; draft admission requests | |
| July 28 | Telecon., client re phone records; review assorted records from Yellow Cab & T-Mobile | 2.50 |
| July 29 | Memo to VMG re telecon., client re phone records; review doc. produced by Yello[w] Cab | 1.50 |
| July 31 | Research telecons., to contact Dr. hauda; review & edit opp. re expert designation; process docs. from client | 2.00 |
| August 3 | Begin research re summary judgment on liability | 1.00 |
| August 11 | Review T-Mobile production; research therapist/patient privilege; research intent requirements for assault & battery | 4.00 |
| August 12 | Research re summary judgment motion – intent/assault & battery | 2.00 |
| August 13 | Research intox. as defense to assault & battery, hate-crime, intentional infliction of emotional distress | 2.00 |
| August 17 | Review Dahlberg & Emerald Aviation financial docs.; research re summary judgment on liability | 4.00 |
| August 19 | Research spousal privilege & waiver issues | 4.00 |
| August 20 | Research marital communications privilege & waiver | 3.00 |
| August 21 | Review immigration docs.; research marital communications privilege & waiver; draft memo to VMG | 5.00 |
| August 23 | Process docs. from Fairfax gov't (police notes) | 3.00 |

| August 24 | Draft memo re marital privilege; review pleadings re our motion to compel answers to admissions, opp. to motion to quash Decker subp. | 6.00 |
|---|---|---|
| August 25 | Finalize memo re marital communications privilege | 3.50 |
| August 28 | Digest Brenda Dahlberg depo. | 4.00 |
| September 1 | Digest Pikrallidas depo. | 1.0 |
| September 2 | Digest Pikrallidas depo. | 1.0 |
| September 21 | Review video, 911 transcript, discovery for SJ motion; review motion in limine; draft comment | 4.00 |
| September 22 | Research & draft summary judgment memo; draft statement of undisputed material facts | 2.00 |
| September 25 | Research & draft summary judgment memo – Scott v. Harris | 4.50 |
| September 28 | Research (assault & battery) & draft SJ memo | 5.00 |
| September 29 | Finalize SJ draft; review hate crimes statute; draft section of motion; review 11 ED cases & finalize section of motion | 5.00 |
| October 1 | Edit S.J. motion & motion in limine | 2.20 |
| October 2 | Edit S.J. motion; begin compiling exhibits; prepare exhibit list | 5.50 |
| October 3 | Finalize S.J. motion exhibits; review & edit SJ motion – incorporate exhibit references | 2.50 |
| October 4 | Locates [sic] docs./exhibits for motion in limine; edit motion in limine; conf., VMG | 8.00 |
| October 5 | Check citations to summary judgment & motion in limine exhibits; revise S.J. & minLim | 11.00 |

| | & exhibits; review exhibits for accuracy; conf., VMG, copy exhibits | |
|---|---|---|
| October 6 | Finalize summary judgment & motion in limine exhibits – prepare for filing & judge's copy | 4.00 |
| October 16 | Memo to VMG re attorney fees; review opp. to our motion in limine | 3.00 |
| October 18 | Draft reply memo for motion in limine | 4.00 |
| October 20 | Continue drafting reply to Motion in limine | 5.00 |
| October 21 | Finalize draft reply memo; preliminary research re punitive damages | 5.00 |
| October 22 | Draft punitive damages section of reply memo | 4.00 |
| October 23 | Review revised draft of reply memo | 1.00 |
| October 26 | Review records recently produced by Army & INS | 2.50[20] |
| October 30 | Draft jury instructions; prepare for client meeting; post-hearing conf., client, VMG, Sokol; review VMG e-mail demand; conf., VMG & Sokol re same | 8.00 |
| November 1 | Conf., VMG, Sokol & client | 2.20 |
| November 8 | Conf., client | 3.30[21] |
| November 9 | Jury instructions; voir dire | 8.00 |
| November 10 | Reply memo re punitives & mitigation evidence | 7.00 |

[20] These records most logically applied to the discovery that plaintiff had misrepresented his military service; therefore, this work relates to plaintiff's credibility and is not recoverable.

[21] Glasberg's billing entries reflect that he was also present for this client conference; accordingly, this time is duplicative and will be deducted from Tierney's hours.

| November 10 | Revise jury instructions | 3.00 |
| November 15 | Conf., client | 3.00[22] |
| November 17 | Revise voir dire | 2.50 |
| November 19 | Revise & format jury instructions | 3.30 |
| November 22 | Outline Pergolizzi cross | 6.00[23] |
| November 23 | Outline Stallings' trial exam.; review trial exhibits, Allen & Friedman depos. re May 1 interview of Salim | 6.50 |
| November 24 | Outline Friedman trial testimony; review trail exhibits re same; review memo re Hauda & Goodwin testimony; review def.'s voir dire & jury instructions | 7.50 |
| November 25 | Outline Allen trial testimony; revise Friedman trial testimony; consult trial exhibits re same | 7.50 |
| November 27 | Outline Lingan trial testimony; finalize Allen trial testimony; review notes re opening & closing statements & points to include | 8.40 |
| November 28 | Develop themes for opening & closing statements; outline Brenda Dahlberg testimony | 6.50 |
| November 29 | Conf., client, VMG, Sokol re direct testimony; prepare various timelines for Salim direct; organize def. exh. 14; buy trial supplies; conf., VMG re opening statement; review partial jury venire [sic] | 10.50 |

---

[22] Again, Glasberg has an entry for a client conference on the same day.

[23] Doctor Pergolizzi was the defendant's expert medical witness. His expert testimony would not have been required had the battery claim not been included in plaintiff's complaint.

| November 30 | Revise witness outlines; review def. exhibits; conf., VMG, Sokol re Claire & Proulx testimony; review revised jury venire [sic] | 12.00 |
|---|---|---|
| December 2 | Attend trial; conf., VMG & Sokol re Dahlberg re-direct; Stallings exam; client testimony | 12.00 |
| December 3 | Attend trial | 4.00 |
| December 4 | Attend trial | 4.00 |
| | TOTAL | 325.20 |

### 4. **Victor M. Glasberg**

Glasberg's hours will be reduced due to the problems previously discussed. Additionally, some of Glasberg's billing entries refer to interviews with witnesses who were either not deposed or who did not testify at trial. Such interviews obviously added nothing to the case and therefore the hours related to those witnesses will be deducted.

Furthermore, the Court has reduced the hours spent drafting the complaint, preparing for trial, and litigating the trial by one-third. Although the battery count was one of the five counts in plaintiff's complaint, as discussed above, it came to dominate the litigation, and therefore one-third is an appropriate approximation of the weight of that count in relation to the others.

For these reasons, of the 515.20 hours billed by Glasberg, 274.65 are being deducted, leaving 240.55 hours for which fees are recoverable. The hours being deducted are shown in the following chart:

| Date | Work Description | Hours |
|------|-----------------|-------|
| January 12 | Review phone forensic options | 0.40 |
| February 16 | Draft complaint | 0.80 |
| February 17 | Revise complaint | 0.24 |
| May 3 | Read & begin reply to defs. MTD | 2.70 |
| May 13 | Revise opp. to MTD | 0.70 |
| June 4 | MTD hearing; letter to opposing counsel | 3.00 |
| June 10 | Read & begin reply to defs. MTD | 2.70 |
| June 16 | Review med. records | 0.20 |
| June 19 | Telecon., witnesses – Gadsbey, Guirgs, Miraguilo; multiple emails to/from C.A. Lingam [sic] | 1.30[24] |
| June 23 | Telecon., Dr. Walsh | 0.50[25] |
| June 23 | Telecon., witness Canas | 0.20 |
| June 23 | Read multiple emails to/from Morrogh & Lingan | 0.60 |
| June 24 | Initial review discovery from Lawrence (FCPD) | 1.50 |
| June 25 | Review emails from Zwerling | 0.30 |
| July 1 | Review phone data from T-Mobile; review police phone data; review photos & maps; Pikrallidas re settlement, docs.; JZ docs to Lawrence | 1.60 |
| July 8 | Review new Pikrallidas documentation; subpoena Mrs. | 1.60 |

---

[24] None of these witnesses testified at trial or were even deposed.

[25] This witness also did not testify and was not deposed; however, it appears that as a doctor, the individual must have been related to plaintiff's purported physical injuries and therefore this time is not recoverable.

| | | |
|---|---|---|
| | Dahlberg; subpoena to Pikrallidas; conf., staff re Pikrallidas depo.; multiple emails to Pikrallidas | |
| July 9 | Finalize depos., draft notices of depos.; emails, Pikrallidas & Lawrence re depos. | 1.00 |
| July 10 | Multiple emails from/to Lawrence re Pikrallidas & depo.; out-of-state witness depo.; emails, Pikrallidas re depo.; review new doc. request; email to client re docs.; telecom., client re docs; reply to doc. request #2; object to doc. request #3 | 2.70 |
| July 12 | Review all docs. for critical docs. & depo. docs.; annotate docs. | 4.40[26] |
| July 13 | Telecon., Mike Cole re docs.; emails to Baucom & Nick; emails to Nick re depo. scheduling; review docs. for copies & depos. | 2.50 |
| July 16 | To/from Fairfax; conf., C.A. Lingan; get records from G.D.C. | 3.50 |
| July 17 | Lingan declaration | 0.70 |
| July 19 | Lingan declaration | 1.20 |
| July 20 | Conf., counsel re Lingan; revise Lingan dec.; subpoena to T-Mobile; review hot docs. | 2.60 |
| July 21 | Pikrallidas & Brenda Dahlberg depo. prep. | 3.20 |

---

[26] Glasberg does not identify to which depositions these documents were related, but considering the surrounding billing entries' references to the Pikrallidas and Brenda Dahlberg depositions, it is likely that these documents were related to depositions and work for which the Court has determined plaintiff cannot recover. Moreover, by failing to identify the specific matters this work concerned, plaintiff fails to carry his burden of demonstrating the reasonableness of this work.

| July 22 | Final depo. prep.; Pikrallidas & Brenda Dahlberg depos. | 5.30 |
|---|---|---|
| July 25 | Conf., Tierney re division of work; plan depo. & subpoenas for next week | 1.90 |
| July 26 | Prep. for police depos.; select exhibits | 2.90 |
| July 28 | To/from Fairfax; police depos. | 10.00 |
| July 29 | Conf., Tierney & Turkevich re strategy & tactics re prosecutor; draft motion for more depos. | 1.90[27] |
| July 30 | Draft motion for more than 8 depos. | 1.50 |
| August 3 | Multiple emails re NJ & DE deportation; multiple emails, opposing counsel re discovery issues, experts; review def. radiologist opinion; emails to Dr. Jones & Moulton re expert opinion; telecom., Bancroft re IT experts; multiple emails, witnesses | 3.60 |
| August 4 | Multiple emails to/from Baucom re 911 issues; multiple emails Moulton re expert testimony; telecom., Moulton re same; arrange NJ & DE depos.; prepare subpoenas & service letters | 3.50 |
| August 5 | Friedman depo.; travel to/from Fairfax; confer w/ colleagues re strategy; emails to client; telecom., client; email defense counsel re i-phone | 6.00 |
| August 6 | Emails, counsel re. depo.; emails, Baucom re "operator | 2.30 |

---

[27] Plaintiff's Motion for Leave to Take More than Five Non-Party Depositions [Dkt. No. 49], July 30, 2015, was unopposed and was granted; however, the additional depositions sought were of Carolyn Proulx, William Clair, Casey Lingan, Ray Morrogh, a representative at the 911 call center, and a T-Mobile representative—all individuals related to the battery claim. Time spent on this motion is therefore not recoverable.

| | | |
|---|---|---|
| | 10;" read & annotate Pikrallidas & B. Dahlberg depos. | |
| August 7 | Hearing on motion to exclude; multiple emails, Baucom re 911 issues; review 911 documentation | 2.90 |
| August 10 | Emails to Lawrence & Baucom re 911 stipulation | 0.30 |
| August 25 | Prepare Lingan depo.; telecon., Clair counsel | 2.30 |
| August 26 | Lingan depo.; travel to/from Fairfax | 6.00 |
| August 31 | Depo. prep.; change reporter for Proulx; letter to Houda | 1.30 |
| September 1 | Proulx depo.; Clair depo.; email to Nick re admissions | 3.80 |
| September 18 | Motion in limine | 7.00 |
| September 18 | Motion in limine | 7.20[28] |
| September 22 | Revise motion in limine | 5.70 |
| September 29 | MSJ – facts | 1.40 |
| September 30 | Draft letter to Hauda | 0.80 |
| October 2 | Revise motion in limine; revise MSJ; emails to counsel re mediation | 3.20 |
| October 3 | Revise motion in limine | 6.20 |
| October 4 | Revise MSJ | 2.00 |
| October 5 | Revise motion in limine; revise MSJ | 6.60 |
| October 6 | Finalize motion in limine & MSJ & prepare exhibits | 3.40 |
| October 7 | Letter to Baucom re police witnesses; start trial plan for | 1.10 |

---

[28] The identical nature of this entry and the preceding entry strongly suggests that they are duplicates. In any case, because these entries are related to the unsuccessful Motion in Limine and are block-billed, the time in both is deducted.

| | witness time; email Lawrence re open discovery & trial | |
|---|---|---|
| October 8 | Letters to Hauda, Jones & Goodwin | 0.40 |
| October 8 | Letters to Hauda, Jones & Goodwin | 0.40 |
| October 15 | Opposition to motion in limine -- doctors | 2.00 |
| October 19 | Opp. to def. motion in limine; read def. opp. to plaintiff motion in liminei; | 2.30 |
| October 21 | Revise motion in limine reply memo; revise reply memo plf MSJ | 8.70 |
| October 22 | Reply motion in limine | 9.30 |
| October 23 | Multiple emails, Lawrence re brief; reply motion in limine; motion for extension of time | 8.20 |
| October 25 | Finalize reply motion in limine; prepare exhibits | 2.40 |
| October 29 | Prep. session; prep. for hearing | 4.90 |
| November 3 | Conf., co-counsel re voir dire & instructions; draft motion for clarification/ reconsideration; draft Jones direct | 7.70 |
| November 4 | Prep Jones depo. | 0.70 |
| November 5 | Jones depo. – travel to/from Fair Oaks; emails from/to Baucom re officers' testimony | 3.80 |
| November 9 | Emails to/from Hauda (conference room) | 0.30 |
| November 11 | Revise instructions | 0.70 |
| November 13 | Conf., re motion to reconsider; draft reply brief | 3.30 |
| November 15 | Prep. client; finalize reply memo re punitive damages | 3.00 |

| November 16 | Travel to/from Fairfax; depo & Ryus | 8.00[29] |
| November 17 | Revise instructions; revise voir dire; to Fairfax Hosp. – Goodwin & Hauda depos. | 6.20 |
| November 17 | Read & annotate Jones depo.; email to Bancroft; edit voir dire; edit instructions | 2.80 |
| November 20 | Motion re Hauda & Goodwin testimony; read & select testimonial portions of depos.; hearing on pending motion | 4.10 |
| November 23 | Reply re Hauda & Goodwin | 3.40 |
| November 25 | Draft & revise witness outlines; finalize photos & videos/audios; mark up doctor's transcripts | 8.00 |
| November 26 | Emails to defense counsel re doctors depos.; further work on trial book – docs for opening & closing; work on Dahlberg testimony; select photos of porch | 1.50 |
| November 27 | Revise Salim & Dahlberg exams; review all Fairfax officers outlines | 12.00[30] |
| November 28 | Revisions of all others | 4.20 |
| November 30 | B. Dahlberg testimony; motion for earphones; Eric Daniel testimony; check audio video exhibits; modify exhibit 29; opp. to motion to strike Clair & B. Dahlberg | 11.00 |

---

[29] This entry is the only one that Glasberg conceded was related to a different case and should not have been included in the fee award. Pl.'s Reply 8.

[30] Although this entry contains recoverable work, it is a particularly bad example of block-billing because the Court cannot determine how much time was spent reviewing outlines related to the Fairfax police officers that were only involved in the litigation because of the battery claim. The entire entry will therefore be deducted.

| December 1 | Final trial prep. | 3.77 |
| December 2 | Trial; witness preparation | 4.00 |
| December 3 | Trial; closing argument preparation | 4.67 |
| December 4 | Trial | 2.67 |
| | TOTAL | 274.65 |

## D. Total Fees Through Trial

With these adjustments, the total attorneys' fees for work through the trial come to

$147,324.00 based on the following computations:

| Personnel | Adjusted Hourly Rate | Adjusted Hours | Total |
|---|---|---|---|
| Albers | $110 | 61.30 | $6,743.00 |
| Sokol | $125 | 36.50 | $4,562.50 |
| Tierney | $185 | 85.10 | $15,743.50 |
| Glasberg | $500 | 240.55 | $120,275.00 |
| | | TOTAL | $147,324.00 |

This fee is consistent with what plaintiff's counsel was willing to accept in his last

settlement demand. As Mr. Glasberg explains, he initially took the case on the greater of a 37%

contingency fee or an unspecified hourly rate. Glasberg Decl. ¶ 54. During initial settlement

efforts, Glasberg based his $1 million demand on what he believed defendant could pay, but he

reduced that demand approximately a month before trial to a final demand of $300,000 plus

44

attorneys' fees or $500,000 inclusive of attorneys' fees and costs. Id. ¶¶ 8-20.[31] Plaintiff has been

awarded a total of $350,000 in damages by the jury, 37% of which is $129,500. Had defendant

accepted plaintiff's alternative offer of $500,000 inclusive of attorneys' fees, plaintiff would be

in roughly the same position he is in now, and counsel would be receiving roughly the same

amount of fees as they would have had defendant accepted the $500,000 offer. Accordingly, this

fee award is consistent with plaintiff and counsels' expectations and their contingent fee

agreement.

### E.  Work Performed on Fee Application

In addition to the fees sought for work through the trial, plaintiff also seeks fees in the

amount of $8,575.00 for work producing his fee application, Fee Appl. 1; however, he failed to

provide time sheets or specific billing entries for the work performed on the fee application.

Instead, Glasberg simply avers that he "put over 20 hours into drafting and revising [his]

declaration and revising the application," which was initially "drafted by Ms. Sokol." Glasberg

Decl. ¶ 60. He further avers that Sokol spent ten hours "drafting the application," while Tierney

"put 2 hours into editing [the] submission and identifying the documents required for the

documentary appendix." Id. Glasberg requests compensation for 10 hours of the 20 he spent on

the declaration, and for the full 10 hours spent by Sokol and the 2 spent by Tierney. Id.

---

[31] Plaintiff does not appear to dispute that the $1 million demand was based, at least in part, on defendant's ability to pay, as Glasberg quotes his own statement to Dahlberg that "[s]hould you desire to settle the case but contend that we have overestimated your wealth and thus your ability to pay, I will require your provision of sworn net worth statements for yourself and any business in which you have an ownership interst." Glasberg Decl. ¶ 8; see also Glasberg Decl., Doc. App. at 1-3, Letter from Victor M. Glasberg, Esq., to Mr. Edward Dahlberg (Feb. 19, 2015) [Dkt. 189-2] ("We have investigated your personal and professional circumstances . . . and conclude, from the information available to us, that you are a relatively wealthy man. This is thus a matter of consequence for the possible punitive damage [sic] award facing you, quite apart from what a jury would grant Mr. Salim as his actual damages for the abuse and physical injury he suffered at your hands." (emphasis added)).

In calculating how much to award for work on the fee application, the previously reduced hourly rates for Glasberg, Sokol, and Tierney will be used. Additionally, the hours spent by Sokol will be reduced by one-half, because Glasberg's declaration demonstrates that Sokol only drafted the application, which is barely ten pages long and involves approximately four pages of legal analysis, none of which is particularly complicated. Ten hours is an excessive amount of time for drafting the application. With respect to the work performed by Tierney, neither the documentary appendix nor the application required extensive editing or effort to compile, and therefore fees will only be awarded for one hour of his time.

Finally, although Glasberg avers that he is only requesting one-half of the 20 hours he spent on the application, much of the application contains unnecessary information, while failing to address more important issues in greater detail. In particular, it was unnecessary to obtain declarations from six different attorneys, none of whom engaged in extensive analysis of the fee rates or billing entries, because one declaration of the same quality as the Travell declaration would have sufficed. Similarly, the reply brief in support of the fee application does not address in depth many of the issues raised by defendant's opposition,[32] and much of Glasberg's declaration is spent arguing that the battery claim was not a major part of the litigation and that he focused almost no energy on litigating that claim until the defense forced him to do so; assertions that the Court has already rejected. Accordingly, Glasberg's hours on the application will be reduced to 7 hours, which represents approximately one-third of the time he avers he spent on the application.

---

[32] For example, plaintiff does not address defendant's arguments regarding the costs of suit, which raises a somewhat complicated question of state law.

46

With these adjustments, the attorneys' fees awarded for work on the fee application total $4,310.00, based on the following computation:

| Personnel | Adjusted Hourly Rate | Adjusted Hours | Total |
|-----------|---------------------|----------------|-------|
| Sokol | $125 | 5.0 | 625.00 |
| Tierney | $185 | 1.0 | 185.00 |
| Glasberg | $500 | 7.0 | 3,500.00 |
| | | TOTAL | 4,310.00 |

## F.  **Request for Costs**

Finally, plaintiff seeks recovery of $17,162.00 in costs. See Glasberg Decl., Doc. App. at 74. Defendant argues that plaintiff's request for costs is untimely to the extent that it is a request for costs under 28 U.S.C. § 1920, which, pursuant to Local Civil Rule 54(d), must be filed "within eleven (11) days from the entry of judgment, unless such time is extended by order of the Court." See Def.'s Opp'n 22-23. Defendant further argues that to the extent the request for costs is brought pursuant to Va. Code Ann. § 8.01-42.1 and controlled by Virginia law, the requested costs far exceed recoverable costs under Virginia law. Id. at 23. According to defendant's calculations, plaintiff is only entitled to the $400.00 filing fee and $190.68 in fees for service of process, a total of $590.68 in costs. Plaintiff does not respond to these arguments.

Va. Code Ann. § 8.01-42.1 entitles a prevailing party to "an award of the cost of the litigation;" therefore, this request is not governed by the local rules and is timely. Defendant's argument regarding the applicable Virginia law relies exclusively on the Virginia Supreme Court's opinion in Advanced Marine Enterprises, Inc. v. PRC Inc., 501 S.E.2d 148 (Va. 1998),

47

which rejected an award of "costs of suit" under Va. Code Ann. § 18.2-500(a) that included "expert witness fees, and expenses for express mail service, messengers, meals, law clerk 'temporaries,' computer-based legal research, 'library research,' photocopies, parking, taxicabs, telephone calls, and transcripts." Id. at 160. Instead, the court limited the costs awarded to "those costs essential for prosecution of the suit, such as filing fees or charges for service of process." Id. This restrictive approach stems from the principle that statutory "authority for such awards [of costs] is in derogation of the common law and, thus, subject to a strict interpretation." Lansdowne Dev. Co., L.L.C. v. Xerox Realty Corp., 514 S.E.2d 157, 162 (Va. 1999) (citing Advanced Marine, 501 S.E.2d at 159). In the absence of contrary authority or argument provided by plaintiff, the Court finds that the reasoning in Advanced Marine is controlling.

Moreover, even if the costs were not limited to "those costs essential for prosecution of the suit," Advanced Marine, 501 S.E.2d at 160, Glasberg has essentially conceded that the majority of plaintiff's costs are related to the failed battery claim by averring that "[t]he largest portion of costs was for discovery depositions of Mr. Dahlberg, county personnel implicated by the 'forensic impossibility' defense, and three medical doctors whose depositions I had to take because of the ruling in limine procured by defense counsel." Glasberg Decl. ¶ 50. Glasberg further avers that "[c]opying charges were substantial given the large volume of documentation produced by third parties subpoenaed for documents by Mr. Dahlberg, including a dozen health providers and several county agencies." Id. Although plaintiff attempts to blame defendant for these costs, as the discussion above demonstrates, these costs resulted from the battery claim and plaintiff's credibility issues.

Accordingly, plaintiff will only be awarded the full cost of his filing fee and process servers. His other costs are not recoverable. The costs listed for "courier services," "court

48

reporters," "mileage & tolls," "parking," "photo & electronic copies," "Westlaw (online research)," and "witness fees" all fall within the categories explicitly excluded by the Advanced Marine court. See Advanced Marine, 501 S.E.2d at 160. Although the remaining categories—specifically, the "investigator/asset check," "phone analyst," "medical records," "miscellaneous records," and "trial preparation material"—are not explicitly addressed by the Advanced Marine decision, they do not appear to be "costs essential" to litigating the suit. The phone analyst and medical records costs are also not recoverable because most, if not all, would be related to the battery claim. Finally, the entries for "miscellaneous records" and "trial preparation material" are too vague. Accordingly, they are not recoverable.

In total, plaintiff will recover the costs of the filing fee and service of process, for a total of $590.68 in costs.

### III.   CONCLUSION

For the reasons stated above, plaintiff will be awarded attorneys' fees in the amount of $151,634.00 and costs in the amount of $590.68 by an appropriate Order to be issued with this Memorandum Opinion.

Entered this 18 day of May, 2016.

/s/

Leonie M. Brinkema
United States District Judge

Alexandria, Virginia

49